LEBEDIN | KOFMAN
LLP
ATTORNEYS AT LAW
26 BROADWAY, 27TH FLOOR
NEW YORK, NY 10004
T (212)500-3273
F (855)696-6848

ARTHUR LEBEDIN*                                            * Member N.Y. & N.J. Bar
RUSS KOFMAN+                                                   + Member N.Y. Bar
STEPHANNIE MIRANDA^                                     ^Member N.Y., N.J. and F.L. Bar
CONOR MCNAMARA+                                      = Member N.Y., N.J., N.C. & S.C. Bar
SCOTT KIM+
BRIAN KUPFERBERG+
LARITA YUSUF=

October 28, 2019

Hon. Roslynn R. Mauskopf
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: Wilhelmina Nicomedez v. City of New York, et al.
     19-CV-4470 (RRM) (PK)
     United States District Court, Eastern District of New York

Dear Judge Mauskopf:

  Our office represents Ms. Nicomedez in the above-referenced matter. Pursuant to your Honor's Individual Rules and the Order entered regarding civil motions and responses thereto, I am writing to set forth the factual bases on which Plaintiff intends to rely to oppose defendant Wroblewski's proposed motion to Dismiss.

  Plaintiff, a 51-year old female audit manager without a criminal record, lives in the same building as Defendant Wroblewski, a New York State Trooper. Plaintiff made several complaints to the building's manager about Defendant Wroblewski's air conditioning unit dripping water onto her own unit and causing loud noises, but the building did not address Plaintiff's concerns. Defendant Wroblewski then made, on three separate occasions, threatening statements at Plaintiff, saying, in sum and substance, "Stop complaining about me to the building, I have a gun." Plaintiff reported the threatening statements to both the New York State Troopers and NYPD's 112th Precinct. Thereafter, upon information and belief, Defendant Wroblewski conspired with NYPD officers of the 112th Precinct to harass, intimidate, and falsely arrest Plaintiff to ensure she doesn't file any more complaints as described in the complaint.

  Contrary to Defendant Wroblewski's assertions, the complaint (*see* Dkt. 1, Complaint) does explain and state Defendant Wroblewski's personal involvement in both the conspiracy claim and the failure to intervene claim.

"In order to survive a motion to dismiss on [a] § 1983 conspiracy claim, [a plaintiff] must allege (1) an agreement [between two or more state actors] …; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." (*See Kenific v. Oswego County*, 2010 WL 2977267, at *18 (S.D.N.Y. Jul. 23, 2010), citing *Hernandez v. Goord*, 312 F.Supp.2d at 545-46 (S.D.N.Y. 2004)). Furthermore, the Second Circuit has "recognized that conspiracy allegations pursuant to section 1983 'are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." See Hernandez, 312 F.Supp.2d at 546 (internal quotations omitted).

In Plaintiff's Complaint (*see* Dkt. 1, Complaint), filed by Plaintiff's previous attorney, the following factual allegations are made. "Defendant Thaddeus Wroblewski stopped Plaintiff on three occasions making the same [threatening] statement. After the third time this occurred, Plaintiff filed a complaint with Defendant Wroblewski's employer, the New York State Police. A few weeks later, Plaintiff found a note in front of apartment door from a Lieutenant Quinones from the New York Sate Police, asking Plaintiff to call him back. Plaintiff returned the call twice but never spoke with Lieutenant Quinones." (*See* Dkt. 1, Complaint, ¶¶ 19-22). "On October 4, 2018, in the early morning as she was beginning her daily commute to work, NYPD officers stopped the Plaintiff on the sidewalk outside her home. These officers arrested Plaintiff, handcuffed her by twisting her arm so far she suffered injuries. Plaintiff was transported to 112th Precinct, forced to undergo a search and frisk in her bra by a female officer but in view of male police officers. While at the precinct, members of the NYPD contacted Defendant Petzolt, who approached the cell in which Plaintiff was being held and told Plaintiff that she is being charged with stalking." (*See* Dkt. 1, Complaint, ¶¶ 23-24). "While [Plaintiff] was detained at the 112th Precinct, Defendant Petzolt also told Plaintiff that the NYPD has informed the New York State Troopers and Lieutenant Quinones of the NYS Troopers and Defendant Wroblewski that Plaintiff was in custody and had been arrested. Prior to this time, Plaintiff had never mentioned the name Lieutenant Quinones of the New York State Police to any NYPD officer." (*See* Dkt. 1, Complaint, ¶¶ 28-29). "Numerous times while Plaintiff was being held at the 112th Precinct, she was told by Defendant Petzolt and other officers to stop complaining about Defendant Wroblewski." (*See* Dkt. 1, Complaint, ¶ 27).

As stated in *Hernandez*, conspiracy allegations "are by their very nature secretive operations and may have to be proven by circumstantial, rather than direct, evidence." See Hernandez, 312 F.Supp.2d at 546 (internal quotations omitted). Here, the facts either directly or circumstantially support Plaintiff's claims of § 1983 conspiracy enough to survive a 12(b)(6) motion to dismiss. First, Defendant Petzolt contacting Lieutenant Quinones of the NYS Troopers before Plaintiff mentioned Lieutenant Quinones evidences a meeting of the minds between the officers of the 112th Precinct and the NYS Troopers. Additionally, the NYPD officers and Defendant Petzolt repeatedly telling Plaintiff to stop complaining about Defenant Wroblewski further evidences that the NYPD were working in concert with the NYS Troopers. The NYPD had no reason to repeatedly warn Plaintiff against complaining about Defendant Wroblewski, an NYS Trooper: this shows a meeting of the minds between the NYPD and NYS Troopers.

Second, Defendant Petzolt calling Lieutenant Quinones of the NYS Troopers and Defendant Wroblewski to inform them that Plaintiff had been arrested is also evidence of the

unconstitutional injury they intended to commit to further their conspiracy. Without the conspiracy to arrest, injure, and intimidate Plaintiff in place, there is no possible reason why Lieutenant Quinones and Defendant Wroblewski had to be notified immediately of Plaintiff's arrest.

Third, the actual arrest and injuries that the officers of the 112th Precinct inflicted upon Plaintiff during said arrest is the "overt act done in furtherance of that goal causing damages." Plaintiff was injured in, but not limited to, the following ways: false arrest and detention, permanent damage to Plaintiff's elbows, strip search in the presence of men, fear, humiliation, and damage to Plaintiff's reputation.

Plaintiff's allegations that Defendant Wroblewski acted in his official capacity as an NYS Trooper is similarly shown by the alleged facts. If Defendant Wroblewski had not leveraged his official position as an NYS Trooper, then Lieutenant Quinones or the NYS Troopers would never had to have gotten involved in the conspiracy. By involving the New York State Troopers in the conspiracy to cause unconstitutional injuries to Plaintiff, the factual allegations facially prove that Defendant Wroblewski acted in his official capacity to some degree.

Despite the raised standards under both *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the factual allegations in Plaintiff's Complaint passes muster. The factual allegations are more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action [. . .]." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)), and enough facts have been alleged that they are more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Far from being a 'bare allegation,' the facts allege that NYPD officers acted in a manner that would suggest a conspiracy with Defendant Wroblewski and the NYS Troopers. As the Second Circuit has recognized, conspiracy allegations are "by their very nature secretive operations and may have to be proven by circumstantial, rather than direct, evidence." See Hernandez, 312 F.Supp.2d at 546 (internal quotations omitted).

When Plaintiff's factual allegations are taken as true in light of Defendant's FRCP 12(b)(6) motion to dismiss, there is enough evidence to show Defendant Wroblewski's personal involvement in the conspiracy of Plaintiff's wrongful arrest and other related injuries. As such, we respectfully submit that Defendant Wroblewski be disallowed from filing a motion to dismiss under FRCP 12(b)(6) and stay on as a party to the litigation.

Respectfully,

**/s/ Russ Koffman**
Russ Koffman
Lebedin Kofman LLP

cc: All Counsel of Record (*via* ECF)