UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WILHELMINA NICOMEDEZ,

                      Plaintiff,                            **MEMORANDUM AND ORDER**

  - against -                                    19-CV-4470 (RRM) (PK)

CITY OF NEW YORK, *et al.*,

                      Defendant.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiff Wilhelmina Nicomedez brings this action against the City of New York, New York State Trooper Thaddeus Wroblewski, and several named and unnamed New York City Police Department ("NYPD") detectives and officers (collectively, the "NYPD Defendants") alleging a violation of her rights secured by the Civil Rights Act of 1871, §§ 1981, 1983, and 1988, the United States Constitution, and New York State and City laws. (Compl. (Doc. No. 1) at 1.) Before the Court is Wroblewski's motion to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss (Doc. No. 35).) For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

    **I.**    **Factual Background**

      The following facts are taken from the complaint, unless otherwise noted, and the Court assumes the allegations in the complaint to be true for the purpose of the motion. Nicomedez and Wroblewski lived in the same apartment building in Queens, New York. (Compl. ¶ 15.) In mid-2018, Nicomedez filed a series of complaints with her building's staff and management regarding her upstairs neighbor, Wroblewski. (*Id.* ¶ 17.) At the time, Wroblewski was employed

Case 1:19-cv-04470-RRM-PK   Document 36   Filed 09/28/20   Page 2 of 12 PageID #: 174

as a New York State trooper. (*Id.* ¶ 8.) In response to these complaints, on three different occasions Wroblewski told Nicomedez to stop complaining about him and that he has a gun. (*Id.* ¶¶ 18–19.) Nicomedez filed a complaint against Wroblewski with his employer, the New York State Police. (*Id.* ¶ 20.) A few weeks after filing the complaint, Nicomedez discovered a note on her apartment door from New York State Police Lieutenant Quinones, whom she later learned was Wroblewski's supervisor, asking her to call him. (*Id.* ¶¶ 21, 69.) She attempted to call Quinones twice, but never reached him. (*Id.* ¶ 22.)

On the morning of October 4, 2018, Nicomedez was arrested by NYPD officers, who she claims injured her in the process of her arrest. (*Id.* ¶ 23.) She was taken to the 112th Precinct and underwent a search and frisk, which included a search in her bra. (*Id.*) The search was performed by a female officer but was in view of male officers. (*Id.*) Nicomedez alleges she was further injured when she was fingerprinted in a "manner that twisted her arms and fingers, causing her pain." (*Id.* ¶ 26.) Nicomedez underwent a second search and frisk while wearing only her bra and with her upper torso exposed to both male and female officers. (*Id.* ¶ 30.)

During her arrest, NYPD Detective Petzolt told Nicomedez that she was being charged with stalking based on evidence he had, including her text messages and emails, and she was repeatedly told by Petzolt and other NYPD officer to stop complaining about Wroblewski. (*Id.* ¶¶ 24–27.) Petzolt also told her that both Wroblewski and Quinones had been told about her arrest, despite the fact that she had never mentioned Quinones' name to any of the arresting officers. (*Id.* ¶¶ 28–29.)

At her arraignment, the District Attorney declined to prosecute Nicomedez. (*Id.* ¶¶ 31–32.) Upon release, Nicomedez returned to the precinct to collect her belongings and discovered

2

that certain items were missing, including her "contact lens, work items, an iPad, and a Microsoft Surface Computer." (*Id.* ¶ 33.)

## II. The Instant Action

Nicomedez commenced this action against Wroblewski, Petzolt, the City of New York, and additional named and unnamed NYPD police officers on August 8, 2019. (Compl.) She brings causes of action for (1) deprivation of federal civil rights under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983; (3) excessive force under 42 U.S.C. § 1983; (4) supervisory liability for deprivation of rights under the United States Constitution and 42 U.S.C. § 1983; (5) *respondeat superior* liability for deprivation of rights; (6) 42 U.S.C. § 1983 conspiracy; (7) battery; (8) assault; (9) negligence; (10) abuse of process; (11) intentional infliction of emotional distress; (12) violation of her Fourth Amendment Rights under 42 U.S.C. § 1983 arising from illegal strip searches; and (13) violation of her Constitutional rights under 42 U.S.C. § 1983 arising from defendants' failure to intervene. (Compl. ¶¶ 37–119.)

Only four of the 13 causes of action relate to Wroblewski: the sixth cause of action, alleging a § 1983 conspiracy; the tenth cause of action, alleging abuse of process; the eleventh cause of action, alleging intentional infliction of emotional distress; and the thirteenth cause of action, alleging a violation of her Constitutional rights arising from a failure to intervene. (*Id.* ¶¶ 61–74, 114–19.) Regarding the conspiracy claim, Nicomedez alleges upon information and belief that Wroblewski made an agreement with NYPD Defendants to violate her rights. (*Id.* ¶ 64.) In furtherance of the alleged agreement, the NYPD visited her home multiple times, arrested her, fingerprinted her, sent her to central booking, and submitted false information to the local prosecutor's office in support of criminal charges against her. (*Id.* ¶¶ 67, 70, 72.) Nicomedez points to the NYPD's decision to contact Wroblewski and Quinones as evidence of

3

this agreement.  (*Id.* ¶ 69.)  Nicomedez claims that, as a result of this conspiracy, she suffered constitutional violations including, but not limited to, loss of liberty, false arrest, and unlawful imprisonment, and she seeks punitive and compensatory damages.  (*Id.* ¶¶ 73–74.)

Regarding the failure to intervene, Nicomedez alleges that all of the individually named defendants had an affirmative duty to intervene.  (*Id.* ¶ 115.)  She claims they had a realistic opportunity to intervene and failed to do so.  (*Id.* ¶ 116–17.)  This failure to intervene resulted in a violation of Nicomedez's civil rights for which she seeks compensation.  (*Id.* ¶ 118–19.)

### III. Motion to Dismiss

On December 16, 2019, Wroblewski served his motion to dismiss the complaint. (Memorandum in Support of Motion to Dismiss ("Mot.") (Doc. No. 35-1) at 3–5.)  Wroblewski argues that Nicomedez failed to allege "any particulars or participation by defendant Wroblewski regarding the alleged conspiracy or agreement with the NYPD Defendants to violate her civil rights and have her arrested."  (*Id.* at 5.)  Wroblewski also argues that claims against him in his official capacity as a New York State Trooper are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  (*Id.* at 6.)  Finally, Wroblewski urges the Court to decline to exercise supplemental jurisdiction over the remaining state law actions.  (*Id.*)

In response, Nicomedez argues that she has alleged a plausible set of facts that warrant relief.  (Memorandum in Opposition to Motion to Dismiss ("Opp.") (Doc. No. 35-1) at 4–6.) She also argues that Eleventh Amendment immunity is unavailable as the suit was brought against Wroblewski in his personal capacity.  (*Id.* at 6–7.)  Finally, she suggests that because her § 1983 claim should not be dismissed, the Court should exercise supplemental jurisdiction of her state law claims.  (*Id.* at 7–8.)

4

In reply, Wroblewski once again contends that Nicomedez has failed to plead the facts required to support either of the two federal causes of action against him, and therefore the Court should dismiss the claims against him. (Memorandum in Further Support of Motion to Dismiss ("Reply") (Doc. No 35-3) at 3–6.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal sufficiency of a complaint. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court considering a 12(b)(6) motion must "tak[e] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

A suit against a police officer can either be brought against them in their personal capacity or their official capacity as a government employee. *Kentucky v. Graham*, 473 U.S.

159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal citations and quotations omitted). A suit against an officer acting in their official capacity is effectively a suit against their employer. *Id.* at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . . It is not a suit against the official personally, for the real party in interest is the entity.") (internal citation removed). In such a suit, the Eleventh Amendment principle of sovereign immunity is implicated. *Id.* at 167 ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess, such as the Eleventh Amendment.").

An Eleventh Amendment sovereign immunity defense cannot be raised when a suit is brought against a government employee in their personal capacity. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that such a claim is asserted against him in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment."); *see also Efua Ehi Okoh v. Sullivan*, No. 10-CV-2547 (SAS), 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011) ("Sovereign immunity does not protect state employees from being sued in their personal capacity.").

Here, Wroblewski has not raised any other immunity defenses, thus the only question before the Court is whether this suit was brought against Wroblewski in his personal capacity or official capacity. Nicomedez states that she is "asserting personal-capacity claims against Defendant Wroblewski for taking advantage of his law enforcement authority to threaten the plaintiff and have her falsely arrested and charged." (Opp. At 7.) Accordingly, Nicomedez does

6

not seek damages based on Wroblewski's actions as an agent for the State, which would implicate sovereign immunity. Rather, she seeks damages based on allegations that he took "advantage of his law enforcement authority to threaten the plaintiff and have her falsely arrested." (*Id.*) Given this distinction, Nicomedez's claims against Wroblewski are not barred by sovereign immunity.

## II.  § 1983 Conspiracy

In order to maintain a § 1983 action, a plaintiff must show that the defendant acted under color of state law to deprive the plaintiff of a right arising under the Constitution or federal law. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1984)). In addition, "to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations removed). "In *Ciambriello*, the court explained that 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Hernandez v. Goord*, 312 F. Supp. 2d 537, 546 n.5 (S.D.N.Y. 2004) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)). Furthermore, "pleadings must present facts tending to show agreement and concerted

7

action." *Anilao v. Spota*, 774 F. Supp. 2d 457, 499 (E.D.N.Y. 2011) (citing *Fisk v. Letterman*, 401 F. Supp. 2d 362 (S.D.N.Y 2005)).

Pleading a conspiracy based on information and belief is acceptable, but the pleadings cannot survive a motion to dismiss if they are devoid of detail. *Miller v. City of New York*, No. 05-CV-6024 (SJ) (RML), 2007 WL 1062505, at *4 (E.D.N.Y. Mar. 30, 2007) ("[W]hile facts and evidence solely within a Defendant's possession and knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all.") (citations omitted).

Wroblewski argues that Nicomedez's § 1983 conspiracy claim should be dismissed because she has not alleged sufficient facts to state a claim. (Mot. at 5.)  The complaint paints a different picture.  After Nicomedez complained to building staff and management about her upstairs neighbor, Wroblewski, he confronted her and told her that he had a gun.  Nicomedez filed a complaint with New York State Police about its employee, Wroblewski.  From there, the situation escalated further – she received a note at her home to call Quinones from the New York State Police, whom she did not know but later learned was Wroblewski's supervisor.  Before having an opportunity to speak with Quinones, she was arrested by the NYPD for stalking.  During her arrest, she was told numerous times to stop complaining about Wroblewski and that Wroblewski and Quinones had been told that she was in custody.  When the District Attorney's offices declined to prosecute her, she returned to the precinct to pick up her belongings and found certain items, including an iPad and Microsoft computer, mysteriously missing.  These allegations are far from merely conclusory.  Accepting these allegations as true and drawing all inferences in her favor, Nicomedez sufficiently pled facts to plausibly state a § 1983 conspiracy claim against Wroblewski: namely, that Wroblewski conspired with the NYPD to unlawfully

8

arrest Nicomedez as either retribution for her complaints against him or to intimidate her to stop complaining about him.

Wroblewski also argues that the § 1983 conspiracy against him should be dismissed because Nicomedez has not alleged sufficient facts to support that Wroblewski was personally involved in Nicomedez's arrest.  (Mot. at 5.)  Nicomedez does not allege that Wroblewski was personally involved in her arrest; she alleges Wroblewski's personal involvement in the § 1983 conspiracy.  To the extent that Wroblewski seeks dismissal based on his lack of personal involvement in the conspiracy, that argument fails as Nicomedez has alleged sufficient facts detailing Wroblewski's personal involvement in the conspiracy to violate her rights.  Her narrative plausibly links her altercations with Wroblewski to her subsequent violation of her rights.  The NYPD officers repeatedly told Nicomedez that they were in contact with Wroblewski and Quinones and repeatedly warned her to stop complaining about Wroblewski.  The complaint also suggests that it was Wroblewski's fallacious stalking claim against Nicomedez that served as the basis for her arrest.  Accepting these facts as true, Nicomedez has sufficiently alleged Wroblewski's personal involvement in the conspiracy and subsequent civil rights violations.  Accordingly, Wroblewski's motion to dismiss Nicomedez's § 1983 conspiracy against him is denied.

### III. Failure to Intervene

In the Second Circuit, "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("A police officer 'has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being

9

violated in his presence by other officers.' Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability.") (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)) (internal citations omitted). "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Ricciuti*, 124 F.3d at 129 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635 (1987).

Generalized pleadings alleging failure to intervene claims asserted against all defendants without differentiating between them are "especially problematic." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 619–20 (E.D.N.Y. 2017) (dismissing failure to intervene claim asserted against all defendants as "merely conclusory").

> As the district court explained in *Hardy v. City of New York*, No. 12–Civ–17, 2013 WL 5231459, at *4 (S.D.N.Y. Jul. 9, 2013), "restatement of the legal standard ... does not sufficiently allege constitutional violations in which the [defendants] might have intervened. Where were the [defendants] in relation to Plaintiff and in relation to each other? What impermissible actions did they take? Which officers observed those actions? Plaintiff does not say. Accordingly, he fails to nudge his failure to intervene claim from possible to plausible." . . . Such a generalized pleading, which fails to differentiate between the Defendants, is especially problematic where, as here, Plaintiff is also alleging that Defendants are all liable under a theory of direct participation.

*Ying Li v. City of New York*, 246 F. Supp. 3d 578, 619–20 (E.D.N.Y. 2017) (collecting cases) (alteration in original).

Nicomedez alleges that "[e]ach of the Individual Defendants had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of Plaintiff's constitutional rights." (Compl. at ¶ 115.) She also alleges that Wroblewski was aware of the actions taken against her

10

and failed to intervene when she was allegedly deprived of her civil rights. (*Id.* ¶¶ 116–17.) She does not, however, allege that Wroblewski was present at any point during her arrest. She also does not specify when Wroblewski – or any of the other named and unnamed defendants – ought to have exercised their duty to intervene. Nicomedez's failure to intervene claim Wroblewski therefore fails as she has not alleged sufficient facts to support this claim.

### IV. Outstanding State Law Claims

Nicomedez alleges two state law claims against Wroblewski: abuse of process and intentional infliction of emotional distress. (Compl. ¶¶ 96–105.) Although the Court does not have original jurisdiction over these state-law claims, the Court may exercise supplemental jurisdiction over matters that "form part of the same case or controversy" as plaintiffs § 1983 allegations. 28 U.S.C. § 1367(a). In moving for dismissal, Wroblewski does not address the merits of these claims, but rather suggests that "when all federal claims have been dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims, and dismiss those claims for lack of subject matter jurisdiction, without reaching the merits." (Mot. at 6.) Because a federal claim against Wroblewski remains, the Court will retain supplemental jurisdiction over the related state-law claims asserted against Wroblewski.

### CONCLUSION

For the reasons set forth above, Wroblewski's motion is granted in part and denied in part. Nicomedez's claim against Wroblewski arising from the § 1983 conspiracy may proceed, as may the state-law claims over which this Court exercises supplemental jurisdiction. The Court grants Wroblewski's motion to dismiss Nicomedez's failure to intervene claim. This action is re-committed to the assigned magistrate judge for all remaining pretrial proceedings, including settlement discussions as appropriate.

|  |  |
|---|---|
|  | SO ORDERED. |
| Dated:  Brooklyn, New York | *Roslynn R. Mauskopf* |
| September 28, 2020 |  |
|  | _____ |
|  | ROSLYNN R. MAUSKOPF |
|  | Chief United States District Judge |

12